UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CONOCOPHILLIPS, INC. | * | CIVIL ACTION NO. 2:12-cv-00834 |
| | * | |
| VERSUS | * | JUDGE: MINALDI |
| | * | |
| THE UNITED STEELWORKERS INTERNATIONAL UNION, LOCAL 13-0555 (BULLER: DAVE BULLER) | * | MAGISTRATE JUDGE: KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S CONSOLIDATED MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

ConocoPhillips, Inc. ("Conoco") considers the safety of its workers a top priority. For this reason, the company and United Steelworkers International Union, Local 13-0555 (the "Union") agreed to the following Section 2.2 of their collective bargaining agreement (the "CBA"):

> "Discharge for a confirmed positive test under the substance abuse policy shall not be subject to grievance or arbitration. However, relative to such discharge the Union continues to maintain the right to grieve and arbitrate issues around the integrity of the chain of custody."[1]

Despite the clear and unambiguous language of the CBA, Arbitrator Ed Bankston arbitrated the merits of ex-employee Dave Buller's discharge for a confirmed positive drug test and ruled against the company (the "Arbitration Award"). The narrow, straightforward questions presented to this court are:

1) Did the parties agree to arbitrate a discharge for a confirmed positive drug test?

2) Did the parties agree to arbitrate the issue of arbitrability?

---
[1] Plaintiff's Statement of Undisputed Material Facts, No. 3.

Based on the clear and unequivocal language of the CBA, the only answer to both questions is no. In its Consolidated Memorandum, the Union attempts to create an internal conflict between provisions of the CBA to justify ignoring Section 2.2. It also presents numerous "merit" arguments in an effort to argue facts instead of law. But, none of these efforts can rewrite the labor contract between the parties. Nor can they change that termination for a confirmed positive drug test is excluded from arbitration by the unambiguous terms of the CBA. For this reason, Conoco respectfully asks the court to grant summary judgment in its favor.

I.     ARGUMENT

Conoco never consented to arbitrate the issue of arbitrability. Thus, the court must review the Arbitrator's decision to arbitrate *de novo*. Under any standard of review, the court must vacate the Arbitration Award based on the clear language of the CBA.

### A. The Issue of Arbitrability Must be Reviewed *De Novo*

Conoco never agreed to arbitrate the issue of arbitrability; thus, the court must review whether the parties agreed to arbitrate discharge for a confirmed positive drug test *de novo*.

In a similar case involving a limitation on arbitration in the management functions section of a collective bargaining agreement, the Supreme Court made it clear that the question of whether the parties agreed to arbitrate is for the district court to determine independently:

> "Under the principles set forth in the *Steelworkers Trilogy (Steelworkers* v. *American Mfg. Co.*, 363 U.S. 564; *Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574; and *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593), it was the District Court's duty to interpret the collective-bargaining agreement and to determine whether the parties intended to arbitrate grievances concerning layoffs predicated on a 'lack of work' determination…"

*AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986). The court was unequivocal that the issue of arbitrability should be decided by a court. "[T]he question of arbitrability — whether a collective-bargaining agreement creates a duty for the parties to

arbitrate the particular grievance — is undeniably an issue for judicial determination." *AT&T Technologies, Inc.,* 475 U.S. 643 at 649.

The Union claims Conoco has misinterpreted the Supreme Court's holding in *First Options of Chicago, Inc. v. Kaplan*, in which the court reviewed the question of arbitrability independently even after appellant participated in arbitration. 514 U.S. 938 (1995). The Union asserts that such holding was narrow because, unlike here, the appellants submitted written objections before arbitration. However, the opinion did not turn on the submission of written objections. To the contrary, the court explains that a party need not object to arbitration of the arbitrability question; rather, arbitration is "a matter of contract between the parties" and for the court to defer to an arbitrator's opinion on the matter of arbitrability, there must be "clear and unmistakable" evidence that the parties agreed to arbitrate the arbitrability issue. *Id.* at 943, 944. "In this manner the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits related dispute is arbitrable because it is within the scope of a valid arbitration agreement'--for in respect to this latter question the law reverses the presumption." *Id.* at 944, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The court explains that the presumption must be in favor of independent review because in most cases, parties did not contemplate the issue of arbitrability in making their agreement:

> "But, this difference in treatment is understandable. The latter question [whether a matter is arbitrable] arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration…On the other hand, the former question--the 'who (primarily) should decide arbitrability' question--is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers."

*Id.* at 945 (internal citations omitted).

The Union claims Conoco agreed to arbitrate the issue of arbitrability because its attorney, John Bradford, prefaced a statement with the phrase: "If you decide to arbitrate." In addition, it claims that Bradford failed to present "a clear objection to the Arbitrator's clear statement that he will decide the issue of arbitrability."[2] However, the Union ignores that Mr. Bradford objected to the arbitrator's jurisdiction multiple times throughout the arbitration.[3] Conoco went to arbitration because the Union grievance did not specify which issues it would arbitrate and the parties had agreed to arbitrate chain of custody issues related to termination for a confirmed positive drug test. Conoco never agreed to arbitrate issues outside chain of custody.

Moreover, under basic principles of contract law, the Union has argued no fact that would rise to the level of creating a "clear and unmistakable" agreement between the parties. The CBA is *silent* on the arbitrator's authority to decide the issue of arbitrability. It seems certain, however, that the parties did not intend by Section 2.2 that a discharge for a confirmed positive drug test is not subject to arbitration, unless an arbitrator says it is and arbitrates anyway. This was the result reached by the Arbitration Award. Though Conoco ardently disagrees with his result, the Arbitrator's reasoning on the issue of arbitrability proves that, at the very least, the issue of arbitrability in the CBA is ambiguous. The Arbitrator found he had authority to decide arbitrability based on an alleged ambiguity between Section 2.2, which excludes arbitration for discharge based on a confirmed positive drug test, and Section 17.1, which provides a general statement on the scope of arbitrability. Such ambiguity cannot rise to the level of "clear and unmistakable" evidence needed to defeat the presumption in favor of independent review.

Finally, in *First Options*, the court found that proceeding to arbitration does not create an agreement to be bound by the arbitrator's decision. Because there was "an obvious explanation

---

[2] Defendant's Consolidated Memorandum, p. 9.
[3] Plaintiff's Memorandum in Support of Summary Judgment, pp. 2-3 and Exhibit G, Arbitration Transcript, pp. 65 and 100.

for the [appellant's] presence before the arbitrators," such presence did not signify an agreement to arbitrate. *Id.* at 946. Here too, there is a clear reason why Conoco went to arbitration. The company expected to arbitrate only chain of custody issues with respect to Buller's positive drug test, the only issues arbitrable under the CBA.[4]

In an unpublished opinion, the Fifth Circuit has weighed in on this issue by confirming the Supreme Court's decision. "Where…parties have not agreed to submit the question of arbitrability to arbitration, an arbitrator's determination that a case is arbitrable does not preclude a court from independently deciding arbitrability…This rule applies even when both parties participated in the arbitration proceedings" *Omni Pinnacle v. ECC Operating Services*, 255 Fed.Appx. 24 (5th Cir. 2007) (internal citations omitted).

### B. Under *De Novo* Review, Buller's Discharge was not Arbitrable

By reference to the Arbitration Award, the Union argues that Section 2.2 must be read in light of the contract as a whole, alongside "potentially competing provisions."[5] The Union's use of the adverb "potentially" is telling. There is potential for a conflict between the provisions, but only if they are read in the manner outlined by the Arbitration Award and supported now by the Union. The fatal flaw in the Arbitrator's reasoning is that Section 2.2 does not conflict with any provision of the CBA if read to have its plain language meaning.

Using clear and unambiguous language, the labor agreement between the parties excludes arbitration of discharge for a confirmed positive drug test. Section 2.2 of the CBA reads:

> "The right to promote, discipline, and discharge are likewise the sole responsibility of the Company, provided that claims of discriminatory and of wrongful or unjust discipline or discharges shall be subject to the grievance procedure herein provided. Discharge for a confirmed positive test under the substance abuse policy shall not be subject to grievance or arbitration. However,

---

[4] Plaintiff's Statement of Undisputed Material Facts, No. 3.
[5] Defendant's Consolidated Memorandum, p. 9.

>relative to such discharge the Union continues to maintain the right to grieve and arbitrate issues around the integrity of the chain of custody."[6]

The section acknowledges that "claims of discriminatory and of wrongful or unjust discipline or discharges shall be subject to the grievance procedure herein provided." However, while contemplating this right to arbitrate discharges, the CBA creates the following limitation: "Discharge for a confirmed positive test under the substance abuse policy shall not be subject to grievance or arbitration." Clearly, by contemplating the right to arbitrate discharges in the very section that limits such arbitration for confirmed positive drug tests, the parties intended Section 2.2 to be a specific, limiting provision in harmony with the general arbitration rights of the CBA.

Section 17.1 contains the arbitration rights limited by Section 2.2. It reads: "The *only* grievances which may be submitted to arbitration are those that are based upon differences between the parties as to the meaning, application, interpretation or performance of the provisions of this contract."[7] (emphasis added)

Despite the Union's creative reasoning, no conflict exists between these two provisions. Section 17.1 contains the general, limited (the "only grievances…") scope for issues which are arbitrable. Then, Section 2.2 acknowledges that such scope includes claims of wrongful discharge, but limits such claims in the case of a confirmed positive drug test to chain of custody issues. The Arbitrator, and now the Union, have attempted to create conflict where none exists to strip Section 2.2 of its meaning because it is a barrier to their desired result.

**C. Even Under Deferential Review, the Court Must Vacate the Arbitration Award**

The Union claims that "it was well within the Arbitrator's authority to harmonize Section 17.1 with Section 2.2, and harmonize them he did."[8] Conoco incorporates the arguments of its

---

[6] Plaintiff's Exhibit A, Collective Bargaining Agreement, p. 1.
[7] Plaintiff's Exhibit A, Collective Bargaining Agreement, p. 58.
[8] Defendant's Consolidated Memorandum, p. 16.

initial Memorandum in support of the fact that, rather than harmonizing the sections, the Arbitrator exceeded his authority by ignoring the language of the CBA.[9] An arbitrator has exceeded his authority where "the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions." *Beaird Industries, Inc. v. Local Union 2297 International Union*, 404 F.3d 942, 944 (5th Cir. 2005) (citing to *Delta Queen S.B. Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599, 604 (5th Cir. 1989)).

In its Consolidated Memorandum, the Union offers reasons why the Arbitrator had the authority to decide a non-arbitrable discharge.

The Union claims that because there may be issues of what constitutes "current use," because Buller may have spoken to a nurse before allegedly taking cough syrup, and because Conoco's Substance Abuse Policy is allegedly ambiguous, his discharge for a confirmed positive drug is arbitrable. "All of this certainly gave the Arbitrator enough wriggle room to find that he had the authority to resolve the issue over whether there was just cause to discharge Buller…"[10] All of these issues are incident to Buller's discharge and as such, are excluded from arbitration by the plain language of the parties' agreement. The Union has confused the existence of issues of material fact with the right to arbitrate. The only discharges that are arbitrable are those the parties have agreed to arbitrate, regardless of what material issues may arise.

In a surprising effort to invalidate the drug test provision and engender sympathy from the court, the Union marches out a parade of horribles whereby the company fires sick employees who have no recourse:

> "Moreover, the Employer's flawed reading [of Section 2.2] would lead to an absurd result as it would give the Employer the unfettered power to provide no exemptions from a confirmed positive test; hypothetically, it would be able to discharge all employees that test positive for a legal substance for which they may

---

[9] Plaintiff's Memorandum in Support of Summary Judgment, pp. 8-9.
[10] Defendant's Consolidated Memorandum, p. 14.

7

> have obtained a valid prescription to treat an ailment. If so, the Employer could target any ailing employee on prescription medication, require him or her to undergo a drug test and discharge this employee even though the 'confirmed positive test' would have been a result of a valid, medically prescribed use."[11]

There are numerous flaws with the Union's argument. First, it ignores the fact that employees under the current[12] care of a doctor for prescription medication do not violate Conoco's Substance Abuse Policy. Second, the large majority of prescription drugs do not contain ingredients like opiates, which cause positive drug test results. Finally, the fact that the Union and Conoco agreed that discharge for a confirmed positive drug test is not arbitrable does not mean that employees have no recourse if they are wrongfully discharged for such. They can go to court, and any company would face liability for such a nefarious scheme as conjured above.

Finally, the Union pursues the Arbitrator's argument that because Buller was allegedly denied a fair appeal process, his discharge is arbitrable. Again, the Union attempts to play on sympathy to skirt the law. The appeal process referred to by the Union is incident to Buller's discharge for a confirmed positive drug test and thus, it is not arbitrable. Moreover, the Letter of Agreement between the parties that provides for such appeal states: "It is further agreed and understood that the making of this offer and this appeal process does not in any way waive, supersede, modify, alter, or change any bargaining agreement provisions or other agreements prohibiting the grievance and arbitration of confirmed positives under the Substance Abuse Policy, any other provisions of the collective bargaining agreement, or other provisions of the Substance Abuse Policy or Procedures Guide."[13] Finally, both the Arbitrator and the Union conveniently conflate Buller's termination meeting with this appeals process.[14] In its Counter-

---

[11] *Id.* at 16-17.
[12] Exhibit H, Frequently Asked Questions, US Substance Abuse Policy defines current as within one year.
[13] Plaintiff's Exhibit A, Collective Bargaining Agreement, p. 161.
[14] Defendant's Consolidated Memorandum, p. 20.

Statement of Undisputed Facts, the Defendants states:

> "Buller was denied a proper appeal. On July 2, 2010, Buller was presented a letter of termination. The Employer would only accept [sic] prescription that was issued by his doctor within one year of June 2010."[15]

At his termination meeting on July 2, 2010, Buller was presented with a letter that explained his termination for a confirmed positive drug test.[16] That meeting was not part of Buller's appeal process. That process was alluded to at the arbitration hearing, but not explained in detail because it is irrelevant to the matter at hand.[17]

### D. Union Mischaracterization of Facts Cannot Change the Issue

Using the same strategy employed at the arbitration hearing, the Union uses its Consolidated Memorandum to paint a sympathetic picture of why Buller failed his drug test, where such issues of fact are irrelevant. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a Court is not to rule on the potential merits of the underlying claims." *AT&T Technologies, Inc.,* 475 U.S. 643 at 649.

The Union presents facts that are not only irrelevant, but also inaccurate:

> "There is no dispute in this case that Buller indeed was issued a prescription by a licensed medical practitioner (his doctor) for the cough syrup in question. And, while the prescription had been issued a significant time before Buller used it in this case, there is evidence that he was nonetheless authorized by a licensed medical practitioner (his nurse) to take the cough syrup in the instance at issue here."[18]

To briefly answer the Union's assertions, there is no evidence that the hydrocodone in Buller's system came from cough syrup.[19] The Grievant has never been able to produce an actual

---

[15] Defendant's Counter-Statement of Undisputed Facts No. 51
[16] Exhibit G, Arbitration Transcript, p. 125
[17] Exhibit G, Arbitration Transcript, p. 9-11, 96-97, 118-119, 128, 140-141.
[18] Defendant's Consolidated Memorandum, p. 2.
[19] Exhibit G, Arbitration Transcript, p. 85

prescription for the alleged medication.[20] And finally, though Buller mentioned speaking to the doctor's nurse for the first time during the arbitration hearing, he never claimed the nurse authorized him to take medication or supervised his care.[21]

## II. CONCLUSION

The Supreme Court of Louisiana recently held that a court must set aside an arbitrator's decision where he has "fashion[ed] his own brand of industrial justice." *Exxon Mobil Corp. v. Paper, Allied-Industrial Chem. & Energy Workers Int'l Union, Local 4-12*, 383 F. Supp. 2d 877, 879 (M.D. La. 2005) (citing *Houston Lighting & Power Co. v. Int'l Brotherhood of Electrical Workers, Local Union No. 66,* 71 F.3d 179, 182 (5th Cir. 1995) (internal citations omitted)). This is exactly what Arbitrator Ed Bankston did when he ignored the plain language of the CBA in order to arbitrate, and rule in favor of, the Union's grievance. Such blatant disregard for the law cannot stand and for this reason, Conoco respectfully asks the court to honor the parties' labor agreement and grant summary judgment in its favor.

Respectfully submitted,

*/s/Keith M. Pyburn, Jr.*
KEITH M. PYBURN, JR.
Louisiana Bar No. 10914
TABATHA L. GEORGE
Louisiana Bar No. 33144

FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, Louisiana 70170
Telephone: (504) 522-3303
Facsimile: (504) 529-3850
Email: kpyburn@laborlawyers.com
      tgeorge@laborlawyers.com

JOHN S. BRADFORD
Louisiana Bar No. 03369

STOCKWELL, SIEVERT, VICCELLIO,
CLEMENTS & SHADDOCK, L.L.P.
One Lakeside Place, 4th Floor, P. O. Box 2900
Lake Charles, LA 70602
Telephone: (337) 436-9491
Facsimile: (337) 493-7209
Email: jsbradford@ssvcs.com

Counsel for ConocoPhillips, Inc.

---

[20] Exhibit G, Arbitration Transcript, p. 76
[21] Exhibit G, Arbitration Transcript, p. 131-132

## **CERTIFICATE OF SERVICE**

I, Keith M. Pyburn, Jr., do hereby certify that I have, on this 25th day of September, 2012, caused a true and correct copy of the foregoing CONSOLIDATED MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT to be served electronically upon the following through the Court's ECF system:

Louis L. Robein (LA Bar No. 11307)
Robein, Urann, Spencer, Picard & Cangemi, APLC
2540 Severn Avenue, Suite 400
Metairie, LA 70002
Phone: 504.885.9994
Fax: 504.885.9969
Email: lrobein@ruspclaw.com

Daniel M. Kovalik
*Pro Hac Vice*
United Steelworkers - AFL-CIO
5 Gateway Cntr
Pittsburg, PA 15222
Phone: 412-562-2518
Fax: 412-562-2574
Email: dkovalik@usw.org

*/s/ Keith M. Pyburn, Jr.*
KEITH M. PYBURN, JR.